[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Hale*, Slip Opinion No. 2021-Ohio-772.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-772

IN RE APPLICATION OF HALE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Hale*, Slip Opinion No. 2021-Ohio-772.]

*Attorneys—Character and fitness—Application to register as a candidate for admission to the practice of law—Application disapproved and applicant forever barred from reapplying for the privilege of practicing law in Ohio.*

(No. 2020-1076—Submitted January 27, 2021—Decided March 17, 2021.)

ON REPORT by the Board of Commissioners on Character and Fitness of the Supreme Court, No. 724.

_____

**Per Curiam.**

{¶ 1} Applicant, Alexander Shuman Hale, of Mayfield Heights, Ohio, is a 2018 graduate of the Barry University Dwayne O. Andreas School of Law.  He applied to register as a candidate for admission to the practice of law in Ohio in December 2017 and subsequently submitted an application to take the February 2019 bar exam.

**{¶ 2}** Hale was interviewed by a two-member panel of the Cleveland Metropolitan Bar Association's admissions committee in May 2018, and the committee issued a provisional report recommending that he be approved as to his character, fitness, and moral qualifications. Citing concerns regarding Hale's multiple criminal convictions and an unpaid judgment, the Board of Commissioners on Character and Fitness sua sponte exercised its authority to investigate his application. *See* Gov.Bar R. I(12)(B)(2)(e).

**{¶ 3}** In December 2018, Hale testified at a character-and-fitness hearing before a three-member panel of the board and presented a brief and multiple exhibits in support of his application. The evidence demonstrated Hale's unsettling history of erratic employment, problematic family and living arrangements, fiscal irresponsibility, and his failure to fully disclose those facts in his law-school and bar-exam applications. Believing that further investigation was necessary, the panel informed the board that it could not recommend that Hale be approved to take the February 2019 bar exam. The panel scheduled a second hearing.

**{¶ 4}** Although Hale was informed that a second hearing would be conducted by online videoconference in May 2020, he did not participate. At that hearing, the admissions committee presented evidence demonstrating Hale's knowing misrepresentation of facts regarding his past conduct in his applications for the Ohio and Florida bar exams and his applications for medical school and law school. Based on that evidence, the board now recommends that we disapprove Hale's current application and prohibit him from reapplying for admission to the Ohio bar.

**{¶ 5}** For the reasons that follow, we adopt the board's recommendation, disapprove Hale's pending application, and forever bar him from reapplying for the privilege of practicing law in Ohio.

**Facts**

{¶ 6} The board characterized Hale's life before law school as "unsteady," noting that he had dropped out of high school and obtained a general-equivalency diploma at age 18. Shortly thereafter, he enlisted in the United States Navy but served for just 18 months before receiving an other-than-honorable discharge. He then enrolled at Barry University, where he was placed on academic probation during his freshman year. Hale left the university for financial reasons before graduating but later completed his degree in 2012 at Cleveland State University, graduating with honors.

{¶ 7} From the time Hale left Barry University in 2007 until he started law school at that same university in 2015, he worked for at least six different employers, explored "musical endeavors" for about six months, and received unemployment compensation for approximately 36 months.

{¶ 8} From 2007 through 2014, Hale was charged with multiple offenses, including operating a vehicle while under the influence of alcohol ("OVI"), driving under a suspended license, several instances of speeding, menacing, and domestic violence. He was convicted of the OVI and speeding offenses and two counts of disorderly conduct, the latter relating to the menacing and domestic-violence charges. Hale also completed a diversion program that led to the dismissal of a 2010 charge of driving under a suspended license. He was also investigated in 2010 for theft, drug possession and abuse, and the endangerment of his girlfriend's two young children.

{¶ 9} Although Hale disclosed many of those events in his academic and bar-exam applications, he knowingly misrepresented the facts almost every time that he was instructed to explain the events. His most egregious misrepresentations during the Ohio bar-admissions process related to his discharge from the Navy, his domestic-violence charge, and two instances involving the termination of his employment.

*Hale's Other-Than-Honorable Discharge from the Navy*

{¶ 10} In his 2017 application to register as a candidate for admission to the practice of law in Ohio, Hale disclosed that he had served in the Navy from January 2002 to September 2003 and that he had received an other-than-honorable discharge "for failing a random toxicology screening." When he was asked at his first character-and-fitness hearing about his discharge, he testified, "I was discharged from the military for smoking marijuana. I failed a random drug screening." However, the board obtained an official Navy report stating that Hale was charged with the wrongful use and possession of controlled substances— namely cocaine and amphetamine—while on duty and in violation of UCMJ, Article 112(a), 10 U.S.C. 912a.

{¶ 11} Hale misrepresented the nature of his discharge from the Navy on another occasion prior to his application to register for the Ohio bar. In his January 2016 application to take the Florida bar exam, Hale disclosed his other-than-honorable discharge. But when the Florida Board of Bar Examiners asked Hale to further explain his discharge, he amended his application and stated that he had made "efforts to be separated as an objector." In December 2016, Hale amended the application a second time and stated that he had purposefully ingested "an illicit and illegal substance" in order to fail a scheduled urinalysis.[1] And by signing the amendments, he certified that his answers were complete.

---

1. Hale stated:

> As previously reported, I received an [other-than-honorable] discharge from the U.S. Navy for Misconduct in 2003. This was following my decision to leave the Navy for a conscientious objection. However, during that time, the country was at war and objectors were not granted timely discharges. They were instead sentenced to a type of purgatory of grunt labor for extended periods. * * * Not wanting to be subjected to this, I chose instead to take a course of action that I knew meant near immediate discharge. I ingested an illicit and illegal substance the day before a scheduled routine urinalysis. After failing the drug screening, I received * * * an other than honorable discharge.

{¶ 12} Hale likewise failed to answer direct questions about the circumstances, date, and type of his discharge from the military when he applied to multiple law schools in 2015. In his application to Cleveland State University Marshall College of Law, he falsely answered "No" to a question asking whether he had ever received a discharge that was other than honorable from the military or any other service. In each of those applications, he certified that his answers were complete and accurate. And in a 2013 universal medical-school application, Hale indicated that he had received an other-than-honorable discharge from the military, explaining that "[t]he discharge was a direct result of my then untreated alcoholism."

*Domestic-Violence Charges*

{¶ 13} In his application to register for the Ohio bar, Hale disclosed that he had been charged with domestic violence in January 2008 following a domestic dispute with his mother, who he claimed had thrown his guitar outside into the snow. Hale stated that he had overreacted and overturned a coffee table, and that when local police responded to a "noise complaint," he punched a hole in the wall. He reported that he pleaded guilty to an amended charge of disorderly conduct and was sentenced to and successfully completed "probation [and] anger management" and was ordered to pay restitution. During his admissions-committee interview, Hale claimed that a neighbor had called the police and that there was "no physical contact with another person." And at his December 2018 character-and-fitness hearing, he testified that he and his mother had argued about money that he owed her, that he had overreacted, and that the police had responded to a noise complaint.

{¶ 14} According to the police report of that incident, Hale's mother told the responding officer that she had allowed Hale to live with her temporarily to "help him get cleaned up and off heroin," but that she had recently informed him that she wanted him to move out and had boxed up his belongings. When she told him to move those boxes, he said, "Bitch I will fuck you up," before overturning

furniture and punching a hole in the kitchen wall. She told the officer that as she was calling the police, Hale clinched his fist and swung it at her. Although she ducked the punch to avoid being hit in the head, the punch landed on her arm, leaving a red mark and a bruise. Hale's mother indicated that she wanted to prosecute him for domestic violence and to seek a temporary protection order.

{¶ 15} Hale did not disclose those adverse facts in his registration application, his admissions interview, or in his testimony at his character-and-fitness hearing. Nor did he disclose that he was sentenced to 14 days in jail (ten days suspended, with four days of credit for time served) and ordered to pay a fine of $250 and court costs for that offense.

{¶ 16} Hale made similar misrepresentations about the same incident in his law-school and Florida bar applications, stating instead that "[n]o physical violence was involved" and that he was sentenced to "six months of probation and anger management courses,"—while omitting the salient facts that he had punched a hole in the wall, overturned furniture, physically and verbally abused his mother, and was sentenced to and actually served some time in jail.

*Termination of Hale's Employment*

{¶ 17} In his application to register for the Ohio bar, Hale disclosed that he was arrested and charged with OVI in 2007 and that he had agreed to enter into a court-sponsored diversion program.[2] Hale stated that rather than completing that program, he moved to Bryan, Ohio, and began working as a laboratory technician at Community Hospitals and Wellness Centers ("CHWC"). He reported that he left that job in December 2008 because "[the] position was in a rural area and [he] had trouble fitting in," and he offered a similar explanation in his Florida bar application

---

2. A copy of Hale's September 8, 2009 sentencing entry, which is contained in the report of the National Conference of Bar Examiners, shows that he eventually entered a no-contest plea to a single count of OVI and was sentenced to 180 days in jail with 177 days suspended and received 3 days of credit for participating in a driver-intervention program.

and at his December 2018 character-and-fitness hearing. But a copy of an employment evaluation submitted at Hale's May 2020 character-and-fitness hearing stated that Hale had been terminated from that position in November 2008 for poor job performance and that he posed an unacceptable risk to patients.

{¶ 18} In April 2009, Hale accepted a job as a medical technologist at the Cleveland Clinic Foundation. But in June 2009, he was arrested at work on a bench warrant relating to his failure to appear in his OVI case. Hale was terminated as a result of the arrest. In his application to register for the Ohio bar, Hale disclosed his employment at the Cleveland Clinic and his on-the-job arrest, but he attempted to downplay the reason for his departure and claimed that it "was technically not a termination." And in his Florida bar application, Hale merely stated that he was "[n]ot hired following the probationary period."

{¶ 19} Hale was also less than forthcoming about those events when he applied to law school, reporting only that he had been arrested and agreed to enter into a diversion program—which he also claimed to have successfully completed without further detail. He falsely reported that he left his job at CHWC because his "[c]ontract ended" and he entirely failed to disclose his Cleveland Clinic employment (along with his on-the-job arrest and resulting termination) on multiple law-school applications. Yet he falsely certified on those applications that his answers were complete and accurate. It was not until his December 2018 character-and-fitness hearing that Hale finally admitted that the Cleveland Clinic had fired him—telling him to leave and not to return—as a result of his arrest.

**Board's Recommendation**

{¶ 20} In addition to the facts described above, the board considered Hale's failure to disclose a single incident of academic probation in his law-school and Florida bar applications (although he did disclose the incident in his application to register for the Ohio bar), allegations of child endangering and tolerating drug use in the presence of children that occurred more than ten years ago (that do not appear

to have resulted in any criminal charges against Hale), and his failure to take any action to resolve a nearly $12,000 default judgment entered against him in 2011.

{¶ 21} In light of Hale's untruthfulness regarding his current application to register for the Ohio bar and his Florida bar application—including his false testimony at his December 2018 Ohio character-and-fitness hearing—and his multiple misstatements in his medical-school and law-school applications, the board recommends that we disapprove Hale's pending application and forever bar him from reapplying for the privilege of practicing law in Ohio.

### Disposition

{¶ 22} An applicant for admission to the Ohio bar bears the burden of proving "by clear and convincing evidence that the applicant possesses the requisite character, fitness, and moral qualifications for admission to the practice of law." Gov.Bar R. I(13)(D)(1). An applicant may be approved for admission if the applicant satisfies the essential eligibility requirements for the practice of law as defined by the board and demonstrates that "the applicant's record of conduct justifies the trust of clients, adversaries, courts, and others * * *." Gov.Bar R. I(13)(D)(3). "A record manifesting a significant deficiency in the honesty, trustworthiness, diligence, or reliability of an applicant may constitute a basis for disapproval," *id.*, as may an applicant's failure to cooperate in proceedings before the board, Gov.Bar R. I(14)(C)(6). In assigning weight and significance to an applicant's prior conduct and the applicant's present character, fitness, and moral qualifications, the rules direct us to consider a number of factors, including the age of the applicant at the time of the conduct, the recency of the conduct, the reliability of the information concerning the conduct, the seriousness of the conduct, the cumulative effect of the conduct, evidence of rehabilitation, the candor of the applicant in the admissions process, and the materiality of any omissions or misrepresentations. *See* Gov.Bar R. I(13)(D)(4)(a), (b), (c), (d), (f), (g), (i), and (j).

{¶ 23} In this case, Hale has exhibited a pattern of misconduct and run-ins with the law that started when he was a young adult that might now be characterized as youthful indiscretions had they been properly disclosed. But instead of owning up to his mistakes and showing that he has learned from them, he has engaged in a pattern of dishonest conduct for more than five years in an attempt to conceal them. He lied about his conduct on multiple law-school applications, on his universal medical-school application, and on his applications to take the Ohio and Florida bar exams. He also lied about his past conduct at least three times in sworn testimony at his December 2018 character-and-fitness hearing before an arm of this court.

{¶ 24} At that hearing, Hale offered no legitimate explanation for his numerous false statements and omissions. He claimed that there was "so much" on his record that he had "overlooked a few items," that he was "not trying to deceive" anyone, and that he "disclose[d] all the really, really pertinent stuff." He also suggested that he had not been required to report the nature of his military discharge and that he believed that he had been unjustly terminated by the Cleveland Clinic because he was permitted to collect unemployment benefits. He attempted to support his argument that he had established his present character and fitness, stating, "I've been successful in every endeavor over the past eight years. Everything I put my mind to—in fact—I would argue that could not happen if I had not been rehabilitated." His ongoing pattern of deception and evasiveness, however, is the very antithesis of the honesty and trustworthiness that we require of aspiring lawyers and it pervaded his law-school applications and every level of his bar-admission attempts.

{¶ 25} In *In re Application of Cvammen*, 102 Ohio St.3d 13, 2004-Ohio-1584, 806 N.E.2d 498, ¶ 21, we determined that an applicant's false and incomplete answers in his bar application and in his admissions-committee interview, and his continued attempts to avoid the truth in his testimony before the board, confirmed that the applicant lacked integrity. Notably, the applicant's false and incomplete

statements all related to a single incident in which his employment was terminated for accepting a $5,000 payment from one of his employer's tenants for helping to negotiate a lease assignment. *Id.* at ¶ 5. We concluded, "Where, as here, these ethical infractions so permeate the admissions process that the applicant's honesty and integrity are shown to be intrinsically suspect, our disposition must be to permanently deny his application to register as a candidate for admission to the Ohio Bar." *Id.* at ¶ 22. *See also In re Application of Aboyade*, 103 Ohio St.3d 318, 2004-Ohio-4773, 815 N.E.2d 383 (permanently denying admission to an applicant who had failed to provide complete and accurate information about her past, sent falsified law-school transcripts to potential employers, and submitted a false affidavit and testimony during an attorney-discipline investigation in South Carolina, and was ultimately disbarred in that state for her misconduct).

{¶ 26} Based on the facts described above, we agree with the board's finding that Hale has failed to carry his burden of proving by clear and convincing evidence that he currently possesses the requisite character, fitness, and moral qualifications to practice law in Ohio and that he should be forever barred from reapplying for admission to the Ohio bar.

{¶ 27} Accordingly, Alexander Shuman Hale's pending application is disapproved and he is forever barred from reapplying for the privilege of practicing law in Ohio.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

_____

Alexander Shuman Hale, pro se.

Lester S. Potash, for the Cleveland Metropolitan Bar Association.

_____